IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MELANI DEODHAR BEATTIE, <br><br> Plaintiff, <br><br> v. <br><br> EMERALD EXPOSITIONS and GANNON BROUSSEAU, <br><br> Defendants. | Case No. : <br><br> **Trial by Jury Demanded** |

## COMPLAINT

Plaintiff, MELANI DEODHAR BEATTIE, by and through her attorneys, Case + Sedey, LLC, for her Complaint at Law against Defendants EMERALD EXPOSITIONS and GANNON BROUSSEAU states and alleges as follows:

### Introduction

1. This action arises under Title VII of the Civil Rights Act, (hereinafter "Title VII") the Age Discrimination in Employment Act, (hereinafter "ADEA") and the Illinois Wage Payment and Collection Act.

### Jurisdiction

2. Jurisdiction is conferred on this Court by the above-named statutes, as well as by 28 U.S.C. § 1331 and § 1367. Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391 (b) and (c).

### Factual Allegations

3. Plaintiff Melani Deodhar Beattie ("Plaintiff") is sixty-four (64) years old and a citizen of the United States and a resident of Chicago, Cook County, Illinois. At all relevant times, Plaintiff qualified for the protections of the ADEA and the IWPCA.

4. Defendant Emerald Expositions ("Emerald" or "the Company") is a Limited Liability Company with its headquarters in New York, Richmond County, New York. Defendant Emerald is a citizen of the state of New York.

5. Defendant Gannon Brousseau is a citizen of the United States and a resident of New York.

6. At all relevant times, Plaintiff worked remotely from her home in Chicago, Cook County, Illinois. Defendant paid Plaintiff as an Illinois employee and withheld Illinois taxes from her paycheck.

7. Plaintiff began working for ST Media/HMG known as Boutique Design ("BD") /BDNY as a salesperson in March 2013. In October 2018, Defendant Emerald purchased ST Media/HMG and Plaintiff's employment transferred with the sale.

8. ST Media/HMG's practice was that salespeople were paid commissions for any sale made within their territory, regardless of whether the salesperson assigned to that territory procured the sale.

9. On or around January 12, 2019, Joe Randall, Executive Vice President, offered Plaintiff a new employment contract that was identical to the contract she had with BD. Moreover, Mr. Randall assured her that Emerald intended to compensate her the same way that BD had.

10. Based on their previous discussions, on May 1, 2019, Mr. Randall sent Plaintiff her 2019 Sales Incentive Plan to sign. The Plan provided varying commission levels for "Cumulative Sales." The Agreement defined Cumulative Sales as "Net Billings generated by

you during the Term of this Plan for Emerald products and/or services you are authorized to sell." Attached as Exhibit 1 is a copy of this Plan.

11. In the body of this email to which he attached the Incentive Plan, Mr. Randall told Plaintiff that he had to go through Defendant's legal department as her contract was different from others but that they worked to "mimic the plan" she had with ST/HMG. Based on Mr. Randall's assurances, Plaintiff signed the Incentive Plan.

12. In early 2019, Kevin Gaffney, Emerald Expositions Vice President and Group Show Director, gave many of the Plaintiff's trade show sales to three less experienced but substantially younger salespeople. Plaintiff asked Mr. Gaffney how this would impact her commissions and sales going forward, after which the two discussed the Plaintiff's questions. On June 27, Mr. Gaffney sent Plaintiff an email outlining what they had agreed to during that meeting which was that for 2019 Plaintiff would receive commissions from any sales in her territory, and that if either of the three younger women sold something in her territory, they would also receive commission. Mr. Gaffney confirmed that beginning in 2020, Plaintiff would no longer receive commissions for sales in her territory procured by others.

13. In December 2019, Mr. Gaffney emailed Michelle Finn, Plaintiff's boss, and said Plaintiff would be paid $170,619.49 in commissions by year end with an additional $19,163.90 to be paid once the revenue was collected on those amounts. Plaintiff had sold more in 2019 than she had the previous year in which she had earned $263,000 in commissions. Because of that, Mr. Gaffney's 2019 calculations seemed low to both Plaintiff and Ms. Finn.

14. In December 2019, Defendant paid Plaintiff $170,619.49 for 2019 commissions.

15. Upon further investigation, on or around February 28, 2022, Ms. Finn told Mr. Gaffney and Emerald Senior Vice President, Stacy Shoemaker, that she believed Plaintiff had not

received commissions for approximately $2M in revenue. Per Plaintiff's contract providing a 5% commission rate, Ms. Finn and the Plaintiff estimated that Defendant owed Plaintiff $111,440.56 in unpaid commissions.

16. Plaintiff heard nothing regarding her unpaid commissions until July 29, 2020, when Jennifer Sutherland, Emerald Group Finance Director, sent her an email stating that Defendant determined she was owed $83,376.08 in unpaid 2019 commissions. Despite this written acknowledgement, Defendant never paid Plaintiff this amount.

17. Plaintiff continued to question the amounts owed to her and when payment would be made. On or around March 11, 2021, Gannon Brousseau, Emerald Executive Vice President, sent Plaintiff an email claiming that her commission plan only covered what she sold, not anything sold in her territory. This was contrary to what Mr. Gaffney and Mr. Randall told her (and confirmed in writing). Moreover, Mr. Brousseau was not involved in negotiating or drafting Plaintiff's 2019 Incentive Plan.

18. Four days later, Mr. Brousseau sent Plaintiff another email, this time claiming that Defendant had overpaid her commissions and therefore owed her nothing. Subsequently, Plaintiff, Mr. Brousseau, Mr. Gaffney, Ms. Finn and several others had a telephone call to discuss this issue. Mr. Brousseau claimed that Defendant had "redefined" what a "sale" was and as a result, Plaintiff owed the company for overpaid commissions. Ms. Finn defended Plaintiff and explained that the 2019 contract was intended to mirror her prior one, which Ms. Finn had originally written at ST Media/HMG.

19. On or around March 31, 2021, Mr. Brousseau told Plaintiff that Defendant would not pay her any more commissions and that the matter was closed.

20. On January 21, 2022, Plaintiff filed a charge with the Equal Employment Opportunity Commission alleging age discrimination stemming from the transfer of some of her sales opportunities to her younger counterparts. Attached as Exhibit 2 is a copy of that Charge. On February 7, 2022, Plaintiff's counsel served a copy of this Charge on Defendant's counsel.

21. Defendant terminated Plaintiff on March 15, 2022, claiming a reduction in force yet Plaintiff was the only salesperson in her division terminated and at the time she had generated $1.2M in sales for Defendant.

22. Following her termination, on July 27, 2022, Plaintiff filed an Amended EEOC Charge to include a retaliation claim. Attached as Exhibit 3 is a copy of the Amended Charge.

23. On May 20, 2022, Defendant paid Plaintiff $18,118.90 for past due commissions from 2019. This amount was purportedly for the 2019 sales that Plaintiff had booked but for which revenue had not been collected at the end of 2019. Despite being 26 months late, Defendant did not pay Plaintiff the interest on these amounts, as required by the IWPCA.

24. On September 13, 2022, Plaintiff received her Right to Sue letter from the EEOC. Attached as Exhibit 4 is a copy of that document.

### COUNT I – VIOLATION OF ILLINOIS WAGE PAYMENT AND COLLECTION ACT
### (Against Defendants Emerald and Brousseau)

25. Plaintiff incorporates paragraphs 1-24 as though set forth herein.

26. Plaintiff and Defendant Emerald had an agreement whereby Defendant Emerald agreed to pay Plaintiff commissions for all sales sold in her territory.

27. These commissions constituted wages pursuant to the Illinois Wage Payment and Collection Act.

28. Defendants knowingly refused and continued to refuse to pay Plaintiff her full 2019 commissions.

26. These amounts were due to Plaintiff no later than December 31, 2019.

27. Pursuant to the IWPCA, 2% interest per month accrued on these past due amounts from January 2020 to July 2021. From July 2021 to present, interest accrued at a rate of 5% per month.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against Defendants and order them to pay all past due wages, interest and attorneys' fees and costs incurred in pursuing this Action.

### COUNT II-VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT
### (Against Defendant Emerald Expositions)

28. Plaintiff incorporates paragraphs 1-24 as though set forth herein.

29. Defendant discriminated against Plaintiff based on her age when it gave the bulk of her sales responsibilities to substantially younger less experienced sales representatives.

30. At the time Defendant made this decision, Plaintiff was meeting expectations.

31. As a result, from January 2020 until her termination Plaintiff suffered lost wages in the form of significantly reduced commissions.

WHEREFORE, Plaintiff respectfully requests that this Court award her lost wages stemming from this discriminatory change in job duties, liquidated damages and attorneys' fees and costs incurred in pursuing this Action.

### COUNT III-RETALIATION IN VIOLATION OF THE ADEA
### (Against Defendant Emerald Expositions)

32. On January 21, 2022, Plaintiff filed her EEOC Charge alleging age discrimination.

33. On February 7, 2022, Plaintiff's counsel sent Defendant's counsel a copy of that Charge.

34. Five weeks later, on March 15, 2022, Defendant terminated Plaintiff in retaliation for filing her Charge.

35. As a result, Plaintiff has suffered lost wages and benefits.

WHEREFORE, Plaintiff respectfully requests that this Court award her lost wages and benefits, liquidated damages and attorneys' fees and costs incurred in pursuing this Action.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues herein.

          Respectfully Submitted,

          MELANI DEODHAR BEATTIE


          By:   /s/   *Kristin M. Case*
                One of her Attorneys

Kate Sedey
Kristin M. Case
Case + Sedey, LLC
250 South Wacker Dr., Ste. 230
Chicago, Illinois 60606
Tel. (312) 920-0400
Fax (312) 920-0800
kcase@caseandsedey.com