**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MELANI DEODHAR BEATTIE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 22-cv-05202** |
| | ) | |
| **v.** | ) | **Judge Jeffrey I. Cummings** |
| | ) | |
| **EMERALD EXPOSITIONS and** | ) | |
| **GANNON BROUSSEAU,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Melani Deodhar Beattie brings this action against defendants Emerald Expositions and Gannon Brousseau claiming that they discriminated and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621, *et seq.*, and wrongfully withheld her pay in violation of the Illinois Wage Payment and Collection Act, 820 ILCS 115, *et seq.* (Dckt. #1 at 1).

On December 13, 2022, defendants filed a motion to dismiss or transfer plaintiff's complaint. (Dckt. #15). Defendants seek three possible avenues for relief: (1) dismissal of plaintiff's complaint for lack of personal jurisdiction under Rule 12(b)(2); (2) dismissal of plaintiff's complaint for improper venue under Rule 12(b)(3); or (3) transfer of venue to the United States District Court for the Southern District of New York. (Dckt. #15 at 1). For the following reasons, the Court denies defendants' motion.

## I.    BACKGROUND

The following factual allegations are taken from the complaint, (Dckt. #1).[1]

Plaintiff Melani Deodhar Beattie ("Beattie") is a sixty-four-year-old female resident of Chicago, Illinois.  (Dckt. #1 ¶3).  In March 2013, plaintiff began working as a salesperson for ST Media/HMG, also known as Boutique Design ("BD").  (Dckt. #1 ¶¶6–7).  From 2013 onward, while working remotely for BD from her home in Chicago, plaintiff operated in an assigned sales territory, earning a salary plus commissions for any sale made within that territory.  (Dckt. #1 ¶¶6–8).

Defendant Emerald Expositions ("Emerald") is a limited liability company, which is headquartered in New York, New York, and is a citizen of the state of New York.  (Dckt. #1 ¶4).  Defendant Gannon Brousseau ("Brousseau") is a New York resident who worked for Emerald as an Executive Vice President ("EVP").  (Dckt. #1 ¶¶5, 17).  In October 2018, Emerald purchased BD.  (Dckt. #1 ¶7).  As part of that sale, plaintiff's employment transferred from BD to Emerald.  (Dckt. #1 ¶7).  Other Emerald EVPs include Joe Randall ("Randall"), Kevin Gaffney ("Gaffney"), and Stacy Shoemaker ("Shoemaker").  (Dckt. #1 ¶¶9, 12, 15,17).

On January 12, 2019, Emerald EVP Randall offered plaintiff a new employment contract mimicking her prior contract with BD and assured plaintiff that Emerald intended to replicate her prior compensation structure.  (Dckt. #1 ¶10).  Following their negotiations, Randall e-mailed plaintiff a 2019 Sales Incentive Plan ("2019 Plan" or "the Plan") to sign.  (Dckt. #1 ¶10).  That e-

---

[1] The Court accepts the allegations of the complaint as true when addressing arguments made pursuant to Rule 12(b)(6).  *See Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (citing *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016)).  When addressing arguments raised pursuant to Rule 12(b)(3), the Court accepts as true the facts in the complaint that remain uncontradicted by other evidence in the record.  *See Deb v. SIRVA*, Inc., 832 F.3d 800, 808–09 (7th Cir. 2016).  Because the record remains consistent with the complaint, the Court treats the allegations of the complaint as true for purposes of all arguments raised in the motion to dismiss.

mail reiterated Randall's pledge that Emerald sought to mimic plaintiff's prior employment contract. (Dckt. #1 ¶11). Plaintiff signed the Plan (which Brousseau was not involved in drafting or negotiating). (Dckt. #1 ¶¶11, 17).

Plaintiff's job responsibilities included working assigned trade shows and other events within an assigned geographic territory. (Dckt. #1 ¶8). The Plan specified that plaintiff would earn a fixed base salary along with an opportunity to earn commissions on any "cumulative sales," defined as "Net Billings generated by [plaintiff]" during 2019. (Dckt. #1 ¶10).

Sometime in early 2019, plaintiff realized that Emerald EVP Gaffney "gave many of [her] trade show sales" to three younger, less experienced salespeople. (Dckt. #1 ¶12). Plaintiff asked Gaffney how those assignments would impact her commissions and sales, resulting in a discussion between the two about the issue. (Dckt. #1 ¶12). On June 27, 2019, Gaffney e-mailed plaintiff confirmation of their prior conversation: in 2019, plaintiff would receive commissions from any sales within her territory, but in 2020, she would receive no such commissions for sales procured by other salespeople. (Dckt. #1 ¶12).

In 2019, plaintiff surpassed her 2018 sales, yet, in December 2019, plaintiff and her direct supervisor, Michelle Finn, were notified that plaintiff was to receive $189,783.39 in total commissions – which was considerably less than the $263,000 she earned in commissions in 2018. (Dckt. #1 ¶13). On February 28, 2020,[2] Finn contacted Emerald EVPs, including Gaffney and Shoemaker, to voice her belief that plaintiff's 2019 commissions were underpaid by $111,440.56. (Dckt. #1 ¶15). On July 29, 2020, Emerald's finance director, Jennifer Sutherland, e-mailed plaintiff that Emerald owed plaintiff $83,376.08 in unpaid 2019 commissions. (Dckt. #1 ¶16).

---

[2] The complaint listed this contact as occurring on February 28, 2022, but the Court construes this date as a scrivener's error in context of the rest of the document's contents.

On March 11, 2021, Brousseau e-mailed plaintiff about her 2019 commissions. (Dckt. #1 ¶17). Brousseau explained that plaintiff's new commission plan only covered *her* sales – not any other sales that occurred in her territory. (Dckt. #1 ¶17). On March 15, 2021, Brousseau again e-mailed plaintiff that Emerald overpaid her 2019 commissions and owed her no further commission payments. (Dckt. #1 ¶18). Emerald EVPs Brousseau and Gaffney, along with Finn, subsequently discussed the issue in a group call with plaintiff. (Dckt. #1 ¶18). During the call, Brousseau told plaintiff she owed Emerald for overpaid commissions because Emerald had "redefined what a sale was." (Dckt. #1 ¶18) (internal quotations omitted). On March 31, 2021, Brousseau, altering course, told plaintiff that Emerald would pay her no further commissions and "that the matter was closed." (Dckt. #1 ¶19).

Plaintiff filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 21, 2022. (Dckt. #1 ¶20). On March 15, 2022, Emerald terminated plaintiff's employment and told her they needed to reduce staff. (Dckt. #1 ¶21). No other salespeople in her division were terminated. (Dckt. #1 ¶21). Emerald later paid plaintiff $18,118.90 for past due 2019 commissions. (Dckt. #1 ¶23). After receiving a Right to Sue letter from the EEOC on September 13, 2022, (Dckt. #1 ¶24), plaintiff brought this suit on September 23, 2022, (Dckt. #1).

## II.    DISCUSSION

The Court now turns to the arguments raised in defendants' motion. First, the Court will analyze whether it has personal jurisdiction over each defendant and whether dismissal pursuant to Rule 12(b)(2) is warranted. Second, the Court will analyze whether the Northern District of Illinois is a proper venue for this suit and, in any event, whether this case should be dismissed pursuant to Rule 12(b)(3) or transferred to the Southern District of New York. As discussed

below, each of defendants' arguments in favor of dismissal fail; the interests of justice weigh in

favor of maintaining plaintiff's action in this district and against transfer.

### A. Personal Jurisdiction

#### 1. Legal Standard Governing Motions to Dismiss Under Rule 12(b)(2).

A challenge to a court's exercise of personal jurisdiction over a defendant is made under

Federal Rule of Civil Procedure 12(b)(2). "Federal courts ordinarily follow state law in

determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 571 U.S. 277, 283

(2014), *quoting Daimler AG v. Bauman*, 571 U.S. 117, 134 (2014). Illinois employs a long-arm

statute which applies the same standard as federal due process: a defendant must have sufficient

contacts with the forum state "such that the maintenance of the suit does not offend traditional

notions of fair play and substantial justice." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir.

2017), *quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Physical presence in the

forum state is not required, but there must be sufficient minimum contacts such that the

defendant "should reasonably anticipate being haled into court there." *Brook*, 873 F.3d at 552.

Personal jurisdiction may be "general" or "specific." *Rogers v. City of Hobart, Ind.*, 996

F.3d 812, 818 (7th Cir. 2021), *quoting Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S.

351, 358–59 (2021). General jurisdiction exists when the party's affiliations with the forum state

"are so constant and pervasive as to render [it] essentially at home. *Daimler AG*, 571 U.S. at

122. Plaintiff concedes that the Court lacks general jurisdiction over defendants, so the Court

need not evaluate the issue. *Rogers*, 996 F.3d at 818 (citations omitted).

Specific jurisdiction achieves the purpose of the Due Process Clause "by requiring an

'affiliation between the forum and the underlying controversy,' principally, activity or an

occurrence that takes place in the forum State and is therefore subject to the State's regulation."

*Id.*, *quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)

(cleaned up).  As such, specific jurisdiction "covers defendants less intimately connected with a State [than general jurisdiction], but only as to a narrower class of claims."  *Ford Motor Co.*, 592 U.S. at 359.  A party "should not be haled into the courts of a state unless [it] purposefully availed [it]self of the protection of the laws of that jurisdiction."  *Rogers*, 996 F.3d at 819. Courts must therefore examine "whether the defendant's conduct connects [them] with the forum in a meaningful way," specifically, whether the defendant "purposefully directed his actions at the forum."  *Id.*, *quoting Curry*, 949 F.3d at 396–98 (cleaned up).

     In short, the exercise of specific jurisdiction requires that: "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the state; (2) the alleged injury arises out of or relates to the defendant's forum-related activities; and (3) any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice."  *Rogers*, 996 F.3d at 819.

     The first two elements of such a showing therefore limit specific jurisdiction to a defendant's "suit-related conduct [that] must create a substantial connection with the forum state," *Walden*, 571 U.S. at 284, which is not "a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person," *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 624 (7th Cir. 2022), *quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).  Specific jurisdiction, however, does not "always requir[e] proof of causation – *i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct." *Ford Motor Co.*, 592 U.S. at 362.  "That does not mean anything goes," *id.*, and courts should assess these elements against the defendant's suit-related conduct which foreseeably invokes the specific jurisdiction of the given forum: "potential defendants should have some control over –

and certainly should not be surprised by – the jurisdictional consequences of their actions." *Tamburo*, 601 F.3d at 701 (cleaned up).

Even if a court decides that a defendant's suit-related conduct satisfies the first two elements, it still must consider whether asserting personal jurisdiction nonetheless offends due process under notions of "fair play and substantial justice." *Burger King*, 471 U.S. at 476. Factors relevant to this inquiry include: (1) "the burden on the defendant;" (2) "the forum State's interest in adjudicating the dispute;" (3) "the plaintiff's interest in obtaining convenient and effective relief;" (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies;" and (5) the "shared interest of the several States in furthering fundamental substantive social policies." *Id*. at 476–77, *quoting World-Wide Volkswagen*, 444 U.S. at 292.

A plaintiff need not "alleg[e] personal jurisdiction in the complaint, but 'once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction.'" *Curry*, 949 F.3d at 392, *quoting Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Where, as here, the Court rules without holding an evidentiary hearing, the plaintiff "bears only the burden of making a prima facie case for personal jurisdiction." *uBID, Inc. v. GoDaddy Grp.*, 623 F.3d 421, 424 (7th Cir. 2010).

In considering a Rule 12(b)(2) motion, district courts may weigh affidavits regarding the issue of personal jurisdiction. *Curry*, 949 F.3d at 393. However, when "evaluating whether the prima facie standard has been satisfied, the plaintiff 'is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.'" *Purdue Rsch. Found.*, 338 F.3d at 782. District courts must therefore accept as true any facts in the defendants' affidavits that do

not otherwise conflict with the record, including the plaintiff's complaint. *Curry*, 949 F.3d at 393. Where such conflict exists, courts must resolve such a conflict in the plaintiff's favor. *Id*.

With these principals in mind, the Court turns to the questions presented in defendants' motion.

### 2. The Court Has Personal Jurisdiction Over Each Defendant.

The jurisdictional allegations and evidence relevant to defendants' motion are found in plaintiff's complaint, (Dckt. #1), declaration, (Dckt. #20-1), and Brousseau's declaration, (Dckt. #16-2). As explained below, plaintiff makes a prima facie showing that personal jurisdiction is proper over both Brousseau and Emerald.

### i. The Court has Personal Jurisdiction over Brousseau.

Plaintiff's sole claim against Brousseau is that he knowingly violated the IWPCA when he refused to pay plaintiff her full 2019 commissions by December 31, 2019. (Dckt. #1 ¶¶25–26). Plaintiff contends that Brousseau is subject to jurisdiction in Illinois because he communicated to her that Emerald "had decided not to pay the commissions it owed her." (Dckt. #20 at 5). Defendants argue that plaintiff's allegations fail to make a prima facie showing of specific jurisdiction as to Brousseau because they "[are] bereft of any allegation that [he] transacted any business, committed a tortious act, or breached any duty in" Illinois and that he lacks any meaningful connection to the state. (Dckt. #16 at 7). The Court disagrees.

As explained above, for specific jurisdiction to attach to Brousseau, the Court must limit its analysis to whether he purposefully availed himself to Illinois by "conduct [which] connects him with the forum in a meaningful way." *Rogers*, 996 F.3d at 819 (citation omitted). Specific to her IWPCA claim, plaintiff must allege that Brousseau has more than generalized connections with Illinois to establish specific jurisdiction, such as exercising authority over the Illinois employee's (*i.e.*, plaintiff's) wages or job responsibilities. *See Johnson v. Diakon Logistics*, No.

8

16-CV-06776, 2018 WL 1519157, at *13–14 (N.D.Ill. Mar. 28, 2018) (collecting cases demonstrating that specific, rather than generalized, allegations against non-resident corporate officers are sufficient to establish specific jurisdiction).

Plaintiff has done so here. In her complaint, plaintiff alleges the following regarding Brousseau:

> 5. . . . Brousseau is a citizen of the United States and a resident of New York
>
> . . .
>
> 17. . . . On or around March 11, 2021, Gannon Brousseau, Emerald [EVP], sent Plaintiff an email claiming that her commission plan only covered what she sold, not anything sold in her territory. This was contrary to what Mr. Gaffney and Mr. Randall told her (and confirmed in writing). Moreover, Mr. Brousseau was not involved in negotiating or drafting Plaintiff's 2019 Incentive Plan.
>
> 18. Four days later, Mr. Brousseau sent Plaintiff another email, this time claiming that [Emerald] had overpaid her commissions and therefore owed her nothing. Subsequently, Plaintiff, Mr. Brousseau, Mr. Gaffney, Ms. Finn and several others had a telephone call to discuss the issue. Mr. Brousseau claimed that [Emerald] had "redefined" what a "sale" was and as a result, Plaintiff owed the company for overpaid commissions. . . .
>
> 19. On or around March 31, 2021, Mr. Brousseau told Plaintiff that [Emerald] would not pay her any more commissions and that the matter was closed.

(Dckt. #1 ¶¶5, 17–19). In her declaration, plaintiff avers that from December 2019 through March 2021, she "had several telephone and video calls with various individuals including but not limited to Defendant Gannon Brousseau" and that she participated "in these calls and sent and/or received all e-mails regarding this matter from [her] home office" in Illinois. (Dckt. #20-1 at 1–2).

Indeed, it is Brousseau's conduct – rather than his personal connection – with Illinois that is vital to the Court's consideration of whether plaintiff made a prima facie showing of specific jurisdiction. *See Rogers*, 996 F.3d at 819. The core of plaintiff's IWPCA claim against Brousseau is that he played a part in withholding commissions owed to plaintiff under the 2019

Plan.  That conduct gave rise to plaintiff's IWPCA claim.  *See Krok v. Burns & Wilcox, Ltd.*, No. 98 C 5902, 1999 WL 262125, at *4 (N.D.Ill. Apr. 16, 1999) (IWPCA claims arise out of contract disputes for payment of wages).

Moreover, plaintiff does not allege that Brousseau was only "generally" involved with her disputed commissions.  *See Johnson*, 2018 WL 1519157, at *13–14.  Rather, she alleges that it was Brousseau who changed the course of her pay situation via an e-mail Brousseau sent to plaintiff on March 11, 2021, and by at least one follow-up e-mail and phone call.  Plaintiff alleges that during that call Brousseau claimed a "redefinition" of what qualified as a sale worthy of commission, all of which plaintiff alleges violated her rights under the IWPCA.  At the time of his contacts, Brousseau was aware that plaintiff worked remotely in Illinois and that she serviced all of Emerald's six Illinois-based clients.  (Dckt. #16-2 at 2).  "It does not matter that [Brousseau has] not set foot in Illinois.  Correspondence by phone, mail, and email can be enough for specific jurisdiction where the defendant targets their conduct toward the forum state."  *Costa v. Ramaiah*, 689 F.Supp.3d 553, 572 (N.D.Ill. 2023) (collecting cases finding specific jurisdiction despite defendant not physically entering the State for minimum contacts purposes).  As such, plaintiff sufficiently connected the dots between Brousseau's forum-related conduct and her alleged injury, which is all she needed to do to establish personal jurisdiction as to Brousseau.  *See Chen v. Quark Biotech, Inc.*, No. 03 C 5729, 2003 WL 22995163, at *4 (N.D.Ill. Dec. 15, 2003) ("Whether the IWPCA claim should be characterized as a contract claim, tort claim, or some other form of statutory claim, an employee suffering economic injury by being denied wages is an essential element of an IWPCA claim just as injury is an essential element of a tort claim.").

Lastly, defendants do not "offer a compelling case" that requiring Brousseau to defend suit in Illinois would ". . . offend traditional notions of fair play and substantial justice." *Curry*, 949 F.3d at 402, *quoting Burger King*, 471 U.S. at 477. Litigating this case in Illinois poses minimal burden on Brousseau as Chicago is a major metropolitan area that is readily accessible from New York City. *See Lab Verdict, Inc. v. Lab Equip Ltd.*, 436 F.Supp.3d 1181, 1189–90 (S.D.Ind. 2020). When Brousseau made contact with plaintiff to tell her that Emerald would not pay her outstanding commissions, he should have reasonably anticipated that his actions could result in plaintiff, a citizen of Illinois, haling him into a court in Illinois. *Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, 536 F.3d 757, 764 (7th Cir. 2008). Given that Brousseau offered no other reason why litigating these claims in this District would be unfair, *see Crumpton v. Haemonetics Corp.*, 595 F.Supp.3d 687, 701 (N.D.Ill. 2022), the Court finds that it has personal jurisdiction over Brousseau regarding plaintiff's IWPCA claim.

### ii.    The Court has Personal Jurisdiction over Emerald.

Defendants next argue that Emerald has insufficient contacts with Illinois for the Court to invoke personal jurisdiction over it in this suit. (Dckt. #16 at 7). In addition to the same IWPCA claim made against Brousseau, plaintiff further alleges that Emerald discriminated against her on the basis of her age by giving large portions of her sales responsibilities to younger employees and retaliated against her pursuit of an EEOC charge by terminating her employment, all in violation of the ADEA. (Dckt. #1 ¶¶28–35).

At the outset, because plaintiff stated a prima facie case of agency, Brousseau's forum-related conduct, discussed above, is imputable to Emerald and is counted as Emerald's contacts for jurisdictional purposes. *ABN AMRO, Inc. v. Capital Intern. Ltd*, 595 F.Supp.2d 805, 821 (N.D.Ill. 2008) (citing *Master Tech Prod., Inc. v. Smith*, 181 F.Supp.2d 910, 913 (N.D.Ill. 2002) ("The Illinois long-arm statute expressly authorizes personal jurisdiction over a person for acts

done 'through an agent.'"")).  For the reasons discussed above, plaintiff properly stated a prima facie case that Brousseau's contacts are sufficient for this Court to exercise personal jurisdiction over Emerald as to her IWPCA claim.

Moreover, Emerald's other contacts with plaintiff related to her ADEA claims show that it purposefully availed itself to this jurisdiction by continuing its business dealings Illinois.

Again, plaintiff worked for Emerald from her Illinois residence from about October 2018 through March 15, 2022.[3]  (Dckt. #1 ¶¶7, 21).  In the period immediately following Emerald's purchase of BD, Emerald EVP Randall initiated communications with plaintiff regarding her compensation by phone and e-mail, culminating in Randall sending plaintiff her new employment contract with Emerald.  (*Id.* ¶¶9–11).  Plaintiff asserts that all these contract negotiations occurred via phone, video call, or e-mail, which she "took, sent or received from [her] home office in Illinois."  (Dckt. #20-1 at 1).  During her employment, several Emerald EVPs, including Brousseau, Gaffney, and Randall, as well as her direct supervisor, Finn, contacted plaintiff via phone, e-mail, and video conference.  (*Id.* ¶¶12–19; Dckt. #20-1 ¶5).  Those contacts were consistent – occurring in 2019, 2020, 2021, and 2022 – and plaintiff participated in these calls exclusively from her home office in Chicago, Illinois.  (Dckt. #20-1 ¶5).  Indeed, plaintiff was in Chicago when Gaffney initiated the call terminating her employment.  (Dckt. #20-1 ¶9).

According to Emerald, each and every one of its acts towards and contacts with plaintiff remain insufficient to establish specific jurisdiction because: (1) it is a resident of New York; (2)

---

[3] Emerald employed five other Illinois residents, but it was plaintiff who serviced all of Emerald's Illinois-based clients.  (Dckt. #16-2 ¶¶17, 23; Dckt. #20-1 ¶7).  Emerald paid plaintiff a salary and commissions for her sales, including those involving Illinois-based clients.  (*See* Dckt. #1 ¶¶10, 14; Dckt. #1-1 at 1).

it could employ its remote workforce in any other state; (3) Illinois residents were hired based on their qualifications, not their domicile; and (4), specific to plaintiff, her employment was transferred to Emerald when it purchased her prior employer. (Dckt. #16 at 7–8).

Emerald's arguments fail because it was its choice to continue its contacts with plaintiff that established sufficient contacts to support the Court's exercise of specific jurisdiction. As "[t]he Seventh Circuit has explained . . . emails may be properly considered in minimum contacts analyses, especially if they were purposefully sent to a forum resident knowing that they would 'most likely' be read in the forum." *Levin v. Posen Found.*, 62 F.Supp.3d 733, 740 (N.D.Ill. 2014), *quoting Felland*, 682 F.3d at 674. "This is especially so when the communications occur over several months, such that the communications are not random, fortuitous, or attenuated." *see Urban 8 Danville Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, No. 19-CV-03171, 2020 WL 3058101, at *3 (N.D.Ill. June 9, 2020) (cleaned up).

Contrary to its assertion, Emerald established its connection with Illinois related to plaintiff's claims when it: (1) extended plaintiff's employment contract, offered a renewed payment structure, and permitted her to work remotely from Chicago, Illinois; (2) paid her to service each and every one of its Illinois-based clients; (3) paid her salary; (4) initiated telephone calls, e-mails, and video conferences during the parties' dispute over her 2019 commissions; (5) on June 27, 2019, e-mailed her to confirm she would receive 2019 commissions earned in her territory; and (6) called plaintiff at her Chicago residence on March 15, 2022, to notify her of her termination. None of Emerald's actions in this regard were the "result of random, fortuitous, or attenuated contacts, or . . . the unilateral activity of another party or a third person." *NBA Props., Inc.*, 46 F.4th at 624 (citation omitted). Accordingly, plaintiff made a prima facie showing that

13

Emerald purposefully directed its activities at Illinois by continuing its contacts with plaintiff via now-common virtual means.[4]  *See Rogers*, 996 F.3d at 818.

Plaintiff likewise sufficiently showed that her causes of action against Emerald arise out of its forum-related contacts with Illinois.  Emerald argues that those contacts, which traveled from outside of Illinois to plaintiff's Chicago residence, should lead to a finding that those activities occurred "entirely outside the State of Illinois."  (Dckt. #16 at 8) (emphasis omitted).  But Emerald need not have ever established a physical presence in the state in order to have established sufficient contacts to create plaintiff's cause of action.  *Costa*, 689 F.Supp.3d at 572; *see Levin*, 62 F.Supp.3d at 740.  Emerald entered a contract with plaintiff knowing she would work remotely from Illinois; its agents continued to contact her about work assignments, pay, and her eventual termination with knowledge of her location.  *Curry*, 949 F.3d at 396; *Tamburo*, 601 F.3d at 706.  And, as stated above, Emerald's contacts with plaintiff regarding her commission structure (the June 27, 2019 e-mail) and termination (the March 15, 2022 phone call) were initiated by Emerald and knowingly directed at Illinois.  Those contacts form the bases of plaintiff's ADEA claims.

Moreover, as discussed in Section III(A)(1), defendants do not offer a compelling case that the Court's invocation of personal jurisdiction in this matter runs afoul of traditional notions of fair play or substantial justice.  *Curry*, 949 F.3d at 402.

Simply put, "[b]y reaching out to someone in Illinois, [Emerald] should have reasonably anticipated being haled into court in Illinois."  *Costa*, 689 F.Supp.3d at 572 (quotation omitted).

---

[4] Defendants say that their actions towards plaintiff do not establish sufficient connection to Illinois because those actions are not tortious.  (Dckt. #16 at 7; Dckt. #22 at 2-3).  The test for the propriety of the Court asserting personal jurisdiction, however, does not rely on whether or not defendants' conduct was tortious when plaintiff's claims rely on a breach-of-contract theory in support of its allegations.  *See, e.g.*, *Felland*, 682 F.3d at 674 ("[P]ersonal jurisdiction in a breach-of-contract suit generally turns on whether the defendant purposefully availed himself of the privilege of conducting business in the forum state.")

Emerald relied on plaintiff's regional work from October 2018 through March 2021, when Brousseau first e-mailed her about her disputed commissions; Emerald continued its remote working relationship with plaintiff in full knowledge that she operated in Illinois – indeed, plaintiff alleges that her work profited Emerald during this period, a portion of which came from Illinois-based clients. Litigating this case in Illinois is therefore appropriate given Emerald's myriad forum-related contacts that give rise to plaintiff's claims. In sum: the Court denies defendants' Rule 12(b)(2) motion to dismiss because it has personal jurisdiction over each defendant.

### B. Venue

Having established personal jurisdiction over defendants, the Court next turns to their motion to dismiss for improper venue.

### 1. Legal Standard Governing Motions to Dismiss Under Rule 12(b)(3).

A motion to dismiss for improper venue is properly brought pursuant to Federal Rule of Civil Procedure 12(b)(3). Under Rule 12(b)(3), "the district court assumes the truth of the allegations in the plaintiff's complaint, *unless* contradicted by the defendant's affidavits." *Deb*, 832 F.3d at 809 (emphasis in original) (citation omitted). Essentially, "a court may look beyond the mere allegations of a complaint, and need not view the allegations of the complaint as the exclusive basis for its decision." *Id.* Still, when faced with factual disputes, the Court must draw all reasonable inferences in the plaintiff's favor. *Alani Nutrition, LLC v. Ryse Up Sports Nutrition, LLC*, 23 C 5196, 2024 WL 148969, at *2 (N.D.Ill. Jan. 12, 2024) (citation omitted). When venue is improper, the Court "shall dismiss [the case], or if it be in the interest of justice, transfer such case" to another district where venue would be proper. 28 U.S.C. §1406(a). Venue can properly lie in multiple districts. *See* 28 U.S.C. §1391(b)(1).

### 2. Venue is proper in both the Northern District of Illinois and the Southern District of New York.

Defendants argue that plaintiff failed to plead facts that establish proper venue in this district, warranting dismissal under Rule 12(b)(3) and 28 U.S.C. §1391(b). Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. §1391(b)(1). A "defendant entity with the capacity to sue and be sued, in its common name under the applicable law, whether or not incorporated, is deemed to reside in any judicial district where there is personal jurisdiction." *Savista, LLC v. GS Labs, LLC*, No. 23 C 6445, 2024 WL 1050159, at *4 (N.D.Ill. Mar. 11, 2024) (citing *Wilson v. Coopersurgical, Inc.*, No. 3:22-CV-1651, 2023 WL 6216933, at *16 (S.D.Ill. Sept. 25, 2023), and 28 U.S.C. §1391(c)(2)). Venue is also proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. §1391(b)(2). "A substantial part does not mean 'most,' nor does it require the district court to be the best venue." *Savista*, 2024 WL 1050159, at *4 (citing *Ford-Reyes v. Progressive Funeral Home*, 418 F.Supp.3d 286, 290 (N.D.Ill. 2019)).

Here, defendants argue that plaintiff merely alleges economic harm in support of establishing Illinois as an appropriate venue for her claims. Not so. As explained in Section III(A), the Court has personal jurisdiction over defendants, making venue proper in this district. *Savista, LLC*, 2024 WL 1050159, at *4. 28 U.S.C. §1391(b)(2). Accordingly, the Court denies defendants' motion to dismiss pursuant to Rule 12(b)(3).

### C. Transfer

Finally, pursuant to 28 U.S.C. §1404(a), the Court turns to defendants' argument that, even if venue were proper in this district, the Court should exercise its discretion to transfer the case to the Southern District of New York.

### 1. Discretionary Standard for Transfer of Civil Actions.

Even if the Court finds venue to be proper, it may, in its discretion and "[f]or the convenience of parties and witnesses, in the interest of justice," transfer the case to any district or division where it could have been brought in the first instance. 28 U.S.C. §1404(a). The movant must show "that (1) venue is proper in this district; (2) venue is proper in the transferee district; (3) the transferee district is more convenient for both the parties and witnesses; and (4) transfer would serve the interest of justice." *Guerguiev v. Max Rave, LLC*, 526 F.Supp.2d 853, 856 (N.D.Ill. 2007); *Savista, LLC*, 2024 WL 1050159, at *4. Courts are imbued with considerable discretion in deciding whether to transfer a case because the "weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).

### 2. The Southern District of New York Is Not More Convenient for Both Parties.[5]

To analyze whether transfer would best serve the convenience of the parties, the Court considers: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums. *Rudy v. D.F. Stauffer Biscuit Co., Inc.*, 666 F.Supp.3d 706, 715 (N.D.Ill. 2023) (cleaned up).

First, plaintiff's decision to bring her lawsuit in the Northern District of Illinois is afforded substantial deference. *Id*. (citing *Nalco Co. v. Envtl. Mgmt., Inc.*, 694 F.Supp.2d 994, 998 (N.D.Ill. 2010)); *see In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663–64 (7th Cir. 2003) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should

---

[5] Because defendants are each at home in the Southern District of New York, it is also a proper venue. 28 U.S.C. §1391(b)(1).

17

rarely be disturbed.") (quotation omitted).  That deference is heightened where, as here, plaintiff chose her home forum to litigate her dispute.  *Nalco Co. v. Env't Mgmt., Inc.*, 694 F.Supp.2d 994, 998 (N.D.Ill. 2010).  Illinois is both plaintiff's home and the location where defendants focused their conduct that gave rise to her claims.  Accordingly, plaintiff's choice of forum merits substantial deference here.

Second, "the location of material events for purposes of venue is the location where the defendant's decisions and activities that gave rise to the claim took place."  *Rudy*, 666 F.Supp.3d at 716.  As to a corporate defendant's conduct, the Court should look "to where the underlying business decisions were made."  *Id.* (cleaned up).   It is undisputed that that location is New York, New York.  As such, the Southern District of New York is the situs of material events. This factor favors transfer.

Third, defendants argue that access to proof is easier in the Southern District of New York because defendants maintain their headquarters there.  However, the allegations upon which plaintiff builds her complaint occurred digitally, which negates the geographic location's importance to the Court's consideration of whether transfer is proper.  *See Campbell v. Campbell*, 262 F.Supp.3d 701, 710 (N.D.Ill. 2017) (in "an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance.").  Even if the proof in this case were originally housed in New York, accessing that proof is not significantly more burdensome in this district than elsewhere.  Thus, this factor is neutral.

Fourth, the convenience of the witnesses is "often viewed as the most important factor in the transfer balance."  *Rudy*, 666 F.Supp.3d at 716 (cleaned up).  The convenience to non-party witnesses is given more weight than that of party witnesses, although convenience to party witnesses is afforded "some weight."  *Id*. (citing *Craik v. Boeing Co.*, 37 F.Supp.3d 954, 961

18

(N.D.Ill. 2013)); *see AL & PO Corp. v. Am. Healthcare Cap., Inc.*, No. 14 C 1905, 2015 WL 738694, at *4 (N.D.Ill. Feb. 19, 2015) ("[T]he convenience of witnesses who are within a party's control, such as a party's employees, is far less important than the convenience of non-party witnesses."). The only relevant non-party witness whose location is known to the court, Gaffney, resides in Atlanta, Georgia. (Dckt. #20-1 at 2). Gaffney's convenience in traveling to New York or Chicago appears essentially equal, neutralizing this factor.

Fifth, "the moving party . . . has the burden of showing that the original forum is inconvenient for the defendant and that the alternative forum does not significantly inconvenience the plaintiff." *Rudy*, 666 F.Supp.3d at 717 (cleaned up). Defendants moved to transfer this case and argue that "all witnesses" are located in New York. (Dckt. #16 at 12–13). But transferring this action would almost certainly inconvenience plaintiff, whose testimony will be pivotal to the parties' respective cases. As such, defendants failed to meet their burden, and this factor weighs against transfer.

Weighed in their totality, none of the latter four factors overcome the substantial deference afforded to plaintiff's decision to bring this case in her home forum. *Nalco Co.*, 694 F.Supp.2d at 998. The Court therefore finds these factors weigh against transfer.

### 3. Transfer Would Not Serve the Interests of Justice.

Finally, the Court turns to defendants' argument that transfer of this case would serve the interests of justice. *Coffey*, 796 F.2d at 220–21. The Court must consider several factors relevant to this inquiry, including: (1) docket congestion and likely speed to trial in each forum; (2) each court's familiarity with the applicable law; (3) the desirability of resolving the case in each forum and relationship of the community to the controversy. *Rudy*, 666 F.Supp.3d at 717, *quoting In re Ryze Claims Sols., LLC*, 968 F.3d 701, 708 (7th Cir. 2020). A review of these factors does not favor transfer of this case to the Southern District of New York.

19

First, the difference in speed to trial slightly favors transfer, although the data is mixed on the subject. As of December 31, 2023, the Northern District of Illinois and Southern District of New York's median times from filing to trial of civil cases are 56.9 and 42.0 months, respectively.[6] However, the difference in speed to disposition is negligible (5.7 and 5.6 months). Because speed to trial is likely more relevant, *In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 484 F.3d 951, 958 (7th Cir. 2007), this factor slightly favors transfer.

Although it is generally "advantageous to have federal judges try a case who are familiar with the applicable state law," *Coffey*, 796 F.2d at 221, both forums apply the law of states that are not their own, *see In re Ryze Claim Sols., LLC*, 968 F.3d at 709, and this case does not present unduly complex state law claims. *See Amoco Oil Co. v. Mobil Oil Corp.*, 90 F.Supp.2d 958, 962 (N.D.Ill. 2000) (contract law is not complex and within comprehension of foreign forum). Therefore, this factor is neutral.

Both Illinois and New York are related to and maintain an interest in this matter. Plaintiff is an Illinois resident who alleges that non-residents reached into Illinois and violated the IWPCA, a fact weighing against transfer. *First Nat'l Bank*, 447 F.Supp.2d at 914 ("Illinois has a strong interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors."). However, as stated above, the situs of material events lies in New York, although much of the evidence in this case is easily transferable between the forums. As such, this factor is neutral, if not slightly weighing against transfer.

---

[6] *See Federal Court Management Statistics* (Dec. 31, 2023), Administrative Office of the United States Courts, https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2023/12/31-1. The Court takes judicial notice of these statistics. *See Bell v. City of Country Club Hills,* 841 F.3d 713, 716 n.1 (7th Cir. 2016).

### 4. A Balance of the Factors Weighs Against Transfer.

Weighing all the above factors in their totality, the Court finds, in its discretion, that transfer is inappropriate as it would effectively just transfer defendants' inconvenience to plaintiff, who brought her lawsuit in an appropriate forum. *Morton Grove Pharms., Inc. v. Nat'l Pediculosis Ass'n, Inc.*, 525 F.Supp.2d 1039, 1044 (N.D.Ill. 2007). The conduct giving rise to this suit may have originated outside of Illinois, but defendants knowingly and consistently entered its borders by their digital conduct. The Court therefore concludes that defendants failed to meet their burden "to demonstrate that the balance of the factors weighs heavily in favor of transfer" because transfer would simply convenience defendants at plaintiff's expense. *Id*. Accordingly, the Court denies defendants' motion to transfer venue.

### CONCLUSION

For the reasons explained above, the Court denies defendants' motion to dismiss or transfer this action, (Dckt. #15).

**Date: September 30, 2024**

**Jeffrey I. Cummings**
**United States District Court Judge**

21